# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR408-007 |
| | ) | |
| JAMES WILLIAM BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On April 18, 2008, defendant James Brown formally terminated his relationship with his retained defense attorney, John Van Lloyd.[1] He now seeks court-appointed counsel, asserting that the fee paid to Lloyd by Brown's mother has exhausted all available resources for retaining new counsel. The question before the Court is whether Lloyd is required to

---

[1] Based on some of Brown's prior letters to Lloyd, it is likely that the relationship ended earlier. For the Court's present purpose, however, it is unnecessary to assess whether the termination occurred on some earlier date.

disgorge any of the funds paid him prior to the termination.[2] On April 21, 2008, the Court held a hearing on this matter. For the reasons that follow, Lloyd is **DIRECTED** to pay $10,000 into the registry of the Court, so that those funds might be available to reimburse the general Treasury fund for the fees incurred by court-appointed counsel.

The facts underlying the dispute are as follows: Brown, upon discovering that he was under investigation by the State of Georgia in October 2007 for possessing child pornography, retained Lloyd to represent him in the anticipated state criminal action. Lloyd charged a $7,500 fee, which Brown paid with monies borrowed from his mother. On December 7, 2007, the federal government initiated a criminal action against Brown for the same alleged criminal activity. The state apparently determined not to pursue a prosecution once the federal government became involved, for no state charges were ever filed against Brown. On December 19, 2007, Brown was arrested on the federal charges. Lloyd then approached Brown's

---

[2] Pursuant to 28 U.S.C. § 1367(a), federal district courts have jurisdiction to resolve attorney fee disputes ancillary to a criminal proceeding. Garcia v. Teitler, 443 F.3d 202, 206-10 (2d Cir. 2006). "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, *with respect to the work done in the suit being litigated*, easily fits the concept of ancillary jurisdiction.'" Garrick v. Weaver, 888 F.2d 687, 690 (10th Cir. 1989) (citation omitted) (emphasis in original).

mother to request an additional $7,500 in order to represent Brown in the federal action. Lloyd stated at the hearing that his total fee for the federal case was $15,000, but he credited Brown $7,500 for the monies already paid for handling the state criminal matter. Brown's mother made the requested payment, but she did so without Brown's knowledge or consent.

The attorney-client relationship quickly began to sour. In late December, Brown sent Lloyd a letter requesting that he refund any unused portion of the $15,000 fee. Lloyd responded by hand-written letter stating that he does not give refunds. Brown permitted Lloyd to appear on his behalf at his initial appearance before this Court on December 19, 2007. Their relationship was understandably unclear at that point, for although Brown was not pleased with Lloyd's services, he believed that his inability to secure a refund from Lloyd precluded him from retaining other counsel. On February 27, 2008, Brown sent Lloyd a letter of termination, which again sought a refund of the monies paid. In an effort to continue as counsel, Lloyd visited Brown in jail and gave him a copy of the discovery disclosed by the government. Nevertheless, Brown formally terminated the relationship on April 18, 2008.

Upon termination of the attorney-client relationship, Rule 1.16 of the Georgia Rules of Professional Conduct, incorporated by this Court's Local Rule 83.5(d), states that the attorney must "refund any advance payment of fee that has not been earned." Here, it is undisputed that Lloyd has earned less than the full $15,000.[3] He stated in an itemized time-sheet that he performed thirty hours of work defending Brown.[4] At his suggested hourly rate of $350, he contends that he is entitled to $10,500, which is well below the $15,000 paid him.[5] The Court is of the opinion, however, that Lloyd's suggested fee is grossly unreasonable.

According to Rule 1.5 of the Georgia Rules of Professional Conduct, "a lawyer's fee shall be reasonable." The Rule provides a list of eight

---

[3] Despite his admission that he earned only a portion of the fee, Lloyd still maintains that he is entitled to the entire $15,000 paid him.

[4] Lloyd admitted that he does not maintain detailed hourly records when working as a criminal defense attorney. Nevertheless, he was able to compile a time-sheet from memory. He contends that he spent a total of thirty hours representing Brown. Adding up each of the individual line items in the time-sheet, however, yields a total of thirty-two hours.
    The Court credits Lloyd with only thirty hours for two reasons. First, he states at the bottom of the time-sheet that he worked only thirty hours. Second, for reasons discussed below, the Court simply does not credit either counsel's memory or the trustworthiness of his time-sheet.

[5] It is telling that Lloyd charged $15,000 to handle any trial *and* appeal in this case, yet he seeks to be paid $10,500 for a measly thirty hours of pre-trial work.

factors to consider in determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;
> (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Ga. Code of Prof'l Conduct R. 1.5.

Looking to the first factor, it is clear that Lloyd spent little time or labor in Brown's defense. He made some telephone calls to a state district attorney (who secured a search warrant for Brown's residence but never filed charges against him) and to the federal prosecutor, and he represented Brown at his initial appearance before this Court. But Lloyd never filed any motions in this case and spent little time with his client after the federal charges were filed. The second factor similarly favors Brown. Lloyd does not claim that he sacrificed any other clients in order to represent Brown,

and given the limited attention that Lloyd actually gave to this case, the Court is satisfied that Lloyd did not forego other work by accepting this employment.

Turning to the third factor, Lloyd's reported hourly rate is at the extreme high end of the Georgia legal profession. In 2003, the average fee billed out by Atlanta lawyers was in the range of $265 per hour, while those outside of Atlanta generally charged less. New Ga. Encyclopedia, http://www.georgiaencyclopedia.org/nge/Article.jsp?id=h-1352 (last visited April 21, 2008). This Court is well aware that more experienced and dependable attorneys practicing in the Savannah area charge far less per hour than the exorbitant rate Lloyd requests. The fourth factor also favors Brown, as Lloyd cannot be said to have produced any results whatsoever during his representation. The fifth factor does not weigh in favor of either Brown or Lloyd. Though Brown imposed no special time limitations on his attorney, Lloyd still had to contend with the speedy trial clock. The sixth factor weighs in favor of Brown. Because this is the first time Lloyd has represented Brown, they have not developed any special relationship that would make Lloyd an exceptionally effective advocate for Brown.

The seventh factor weighs *heavily* in favor of Brown, as Lloyd's experience, reputation, and ability simply are not in line with his suggested hourly rate. Lloyd is a solo practitioner who operates his practice without a secretary. Consequently, he hand-writes his letters, and occasionally hand-writes motions. <u>United States v. Tuten</u>, No. CR404-142 (S.D. Ga. June 7, 2004) (doc. 13, hand-written motion to suppress); <u>Khalid El-Sheriff v. Mutual of Omaha, Inc.</u>, No. CV404-057 (S.D. Ga. May 24, 2004) (doc. 8, hand-written motion to dismiss). He also practices without a computer, though this Court's Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means mandate that all attorneys who practice before this Court register online with the Electronic Case Filing System. Lloyd admitted that he is neither in compliance with the Court's administrative procedures nor is he exempted from compliance. Even worse, in a recent case of some notoriety, Lloyd was held in contempt and jailed by a local state judge because of his repeated failure to appear on time for scheduled court proceedings. Jan Skutch, <u>Lawyer Fined $500 for Contempt of Court</u>, Savannah Morning News, March 13, 2008, at 1A, available at http://savannahnow.com/node/462707. Because of Lloyd's

startling and repeated lack of sophistication and professionalism, his suggested rate of $350 per hour is patently absurd.

The eighth and final factor presents the last nail in Lloyd's coffin, as this was not a contingent fee case where Lloyd had to take any extraordinary financial risks to bring the case to trial. Instead, Lloyd received a fixed fee payable in advance. When his client requested a refund of the unearned portion of that fee, Lloyd announced that he did not give such refunds. His representation to his client is untenable and directly contravenes the rules of professional conduct which he is obliged to respect.

Seven of the eight factors weigh in favor of Brown. Consequently, as Lloyd's suggested hourly rate is unreasonable, the Court finds that Lloyd's services are worth, at most, $150 per hour. Multiplied by the thirty hours reported, the total amount earned is $4,500. Adding in $500 for any additional expenses, Lloyd has earned a *maximum* of only $5,000 of the $15,000 paid to him.[6]

---

[6] Lloyd claims to have spent a significant amount of time discussing the case by telephone with the prosecution, Brown, and Brown's mother. Additionally, he was present at Brown's initial appearance, as noted above. He also performed some preliminary legal research. Nevertheless, he never once briefed any issue before any court, never filed or responded to any motion, and did not enter into any extensive discussions with either the state or federal prosecutor during plea negotiations. (Lloyd states that he spent one and a half hours on the phone with the AUSA prosecuting this

Brown is now indigent and without an attorney. He has only $300 in his bank account and no other property of any significant value. Accordingly, pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, counsel will be appointed to represent him. The CJA provides that "whenever the United States magistrate judge . . . finds that funds are available from or on behalf of a person furnished representation," it may direct that those funds be deposited "in the Treasury as a reimbursement to the appropriation." 18 U.S.C. § 3006A(f). Brown's mother indicated at the hearing that she is willing to compensate the CJA fund with any monies refunded from Lloyd.[7] Accordingly, Lloyd is **DIRECTED** to pay the sum of $10,000 into the registry of the Court by May 1, 2008. Those funds will be used to reimburse the CJA appropriation for the expenses incurred by

---

case; AUSA Wade recollected spending less than an hour discussing the case with Lloyd.) Additionally, although Brown has been in custody since his arrest on December 19, 2007, Lloyd only met with him in the jail on one occasion. Consequently, Brown is in approximately the same position he was in at the start of the case, yet Lloyd desires to retain the entire $15,000 paid him.

[7] Some courts have indicated that funds paid by a third party to an attorney are not "available for payment from or on behalf" of the defendant. United States v. Crosby, 602 F.2d 24, 28-29 (2d Cir. 1979); United States v. Bracewell, 569 F.2d 1194, 1200 (2d Cir. 1978); United States v. Small, No. 03-CV-1368, 2007 WL 2293028, a *8 (E.D.N.Y. Aug. 9, 2007). In the present case, however, Brown's mother has openly assented to such a use of the funds. Consequently, these funds are available on behalf of Brown. 18 U.S.C. § 3006A(f).

Brown's appointed counsel. Any sum remaining after this case is concluded will be returned to Brown's mother.

**SO ORDERED** this 23rd day of April, 2008.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**